FILED
COURT OF APPEALS
DIVISION II

2013 DEC 31 AM 9: 15

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,

Respondent,

v.

MAXIMUS DWAYNE MASON,

Appellant.

No. 43235-8-II

UNPUBLISHED OPINION

HUNT, J. – Maximus Dwayne Mason appeals his jury trial convictions for second degree assault, first degree criminal trespass, harassment, and third degree malicious mischief. He argues that (1) his trial counsel provided ineffective assistance in failing to object to the jury instruction defining "recklessness," which he asserts misstated the law and relieved the State of its burden of proving an essential element of second degree assault; (2) the charging information omitted the "true threat" element of harassment; and (3) the trial court erred in excluding as irrelevant two photographs that showed he and the victim were still on affectionate terms. We affirm.

## FACTS

### I. THE CRIMES

Maximus Dwayne Mason and CM[1] married in 1998; they had two children together. They separated in November 2010 and moved into separate nearby houses. When Mason was

---

[1] Because the original charges involved allegations of a sexual nature, we use CM's initials to protect her privacy.

evicted in April 2011, CM let him move in to her home for a few weeks, during which time they shared CM's bed. According to CM, she had no intention of reconciling with Mason, but he tried to reconcile with her.

A few weeks later, Mason and CM had an altercation. CM told their children not to let Mason inside. But Mason kicked down CM's front door, entered her home, pushed CM, and questioned her about where and with whom she had spent the evening. CM told Mason to leave. Mason moved in with a friend, taking with him his smaller personal items and leaving his larger property at CM's house and in her garage; according to CM, Mason may have had a key to her garage, but he did not have a key to her house. CM no longer permitted Mason to enter her home without her permission and told him he could not come by unannounced.

Soon thereafter, CM began dating Terrell (Maurice) Taylor. On the evening of May 4, Taylor and CM were in CM's bedroom having sex. Hearing the dog bark, CM looked outside, saw Mason "storming" toward the house, and warned Taylor that Mason was outside. 2 Verbatim Report of Proceedings (VRP) at 95. Mason kicked open the front door, entered carrying a gun, and approached CM in the living room. Taylor ran out of the house, hearing someone tell him not to get into his car.

Inside the house, Mason threw CM's cellular telephone to the floor, grabbed her by the neck, pulled off two of her necklaces, and pushed her into the kitchen wall so hard that her head made a "depression" in it. 4 VRP at 330. According to CM, she briefly lost consciousness and awoke on the kitchen floor. When she got up to look for Taylor, she found no one in the living room or in her bedroom. Still carrying the gun, Mason returned to the front door; pulled her hair;

2

"grabb[ed]" her; "shov[ed] her; "curs[ed]" at her; told her, "'I should kill you right now'"[2]; grabbed and dragged her by her hair; hit her on the side of her face; picked her up; threw her on her bed[3]; and hit her once with a fraternity paddle.

Still holding the gun, Mason pulled CM outside toward her car. When CM started screaming, Mason took her back inside the house and then went outside alone. CM grabbed her cellular telephone, went upstairs, and started to call 911[4] when Mason returned with the gun and started to "rambl[e]." 2 VRP at 125. Alerted by the dog's bark and still holding the gun, Mason opened the front door, saw that the police were there, "screamed," "slammed" the door shut, and ran into the bedroom. 2 VRP at 67. When an officer knocked, Mason, now unarmed,[5] opened the door, and officers took him into custody.

When the officers entered the house, they found CM inside "very scared" and crying; the left side of her face was "severely swollen" and her hair was in "disarray," as if "it had been pulled on or grabbed." 3 VRP at 273. The officers took CM to the hospital, where she was examined in the emergency room and someone took photographs of her face. CM also suffered bruising to her forearms, left knee, ankles, left thigh, and left ear; she was diagnosed with "concussion syndrome" and a cervical sprain. 3 VRP at 211. The facial bruising lasted two weeks.

---

[2] 2 VRP at 105, 107.

[3] According to CM, Mason also raped her. The jury, however, later found that the State had failed to prove this charge beyond a reasonable doubt.

[4] An officer later testified that the call did go through.

[5] Officers later found the gun under a bedroom dresser.

## II. PROCEDURE

The State charged Mason with first degree burglary, unlawful imprisonment, felony harassment, second degree assault of CM,[6] third degree malicious mischief, and witness tampering.[7] The case proceeded to a jury trial.

### A. Testimony

The State's witnesses testified as described above.[8] Mason testified that after he moved back into CM's house, they occasionally engaged in sexual relations. He characterized their relationship as a "back-and-forth" relationship. 5 VRP at 401. He had wanted to maintain the relationship, but CM had wavered between wanting to continue the relationship and wanting to end it. Because they had been arguing, he decided to leave and had moved out in April 2011 so they could "cool off" and "give each other a break"; he had kept a key to the house. 5 VRP at 403. Mason admitted that he had broken the front door before he moved out, but he denied having kicked it in and claimed that he had broken the door when he ran into it while playing with his sons and the family dog.

---

[6] The State also charged Mason with first degree rape, but the jury acquitted him of that charge. The State originally charged Mason with second degree assault with a deadly weapon or, in the alternative, second degree assault based on the reckless infliction of substantial bodily harm. Before instructing the jury, the trial court dismissed the deadly weapon alternative means of committing second degree assault, leaving intact only the intentional assault/recklessly inflicting substantial bodily harm alternative means.

[7] The State also alleged that (1) other than the witness tampering offense, each offense was a domestic violence offense; and (2) other than the third degree malicious mischief and witness tampering offenses, Mason had committed each offense while armed with a firearm. Mason does not challenge either the resultant domestic violence findings or the firearm sentencing enhancements.

[8] At time of trial, Mason and CM were still married.

Mason further testified that he had returned CM's car on May 4 and was "going around the side of the house" to check on the house and his belongings in the garage "like [he] always [did]." 5 VRP at 410. When he saw CM having sex with Taylor, he (Mason) "turned and headed towards the front door," planning to "confront [CM] and Mr. Taylor." 5 VRP at 415. Mason testified that he had unlocked the door with his key, but he admitted that when a security chain kept the door from opening, he had "pushed" the door open with his shoulder. 5 VRP 415. CM was behind the door when it flew open, and the door hit her in the face.

Mason also admitted to having (1) told Taylor not to access his car and to come back for it later because he (Mason) did not want to risk Taylor's having a gun in the car; (2) argued with CM; (3) pushed CM into the kitchen wall hard enough that her head left a dent in the wall, because CM was "getting in his way"[9] as he attempted to collect some of his belongings[10]; (4) ripped two necklaces off CM's neck; (5) broken CM's cellular telephone; (6) kept a gun in his back pocket during most of the incident; and (7) placed the gun under the bedroom dresser before he knew the police had arrived. Mason denied, however, having (1) grabbed or struck CM, (2) threatened to kill CM or threatened Taylor, (3) noticed that CM had lost consciousness after her head hit the kitchen wall, (4) removed the gun from his back pocket except for placing it on a table when he and CM had calmed down and were sitting in the living room talking, (5)

---

[9] 5 VRP at 423.

[10] Mason testified that he had merely pushed her in the chest with one hand.

had the gun in his hand when he opened the front door and saw the police,[11] or (5) hidden the gun after seeing the police.

### B. Motion To Exclude Evidence

After the State's final witness, the State moved to exclude two photographs depicting Mason and CM in affectionate poses during Mason's December 20, 2010 birthday party, which photographs Mason had just disclosed to the State. The trial court granted the State's motion because (1) the photographs were not relevant because they had been taken several months before the incident; and (2) Mason had not timely disclosed the photographs, which untimeliness caused additional problems, (a) admitting the photographs might require the State to present additional rebuttal testimony, from which the jury might wrongfully infer that the State had failed to disclose the photographs, and (b) no lesser sanction for the untimely disclosure was adequate.

### C. Jury Instructions

The trial court's second degree assault "to convict" instruction stated:

> To convict the defendant of the crime of assault in the second degree as charged in count V, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about May 4, 2011, the defendant intentionally assaulted C.M.;
> (2) That the defendant thereby *recklessly inflicted substantial bodily harm* on C.M.; and
> (3) That this act occurred in the State of Washington.
> If you find form the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

---

[11] Instead, Mason claimed that he had been holding some black lingerie that he had purchased for CM.

6

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 197 (Jury Instruction 40) (emphasis added). The court also defined the term "recklessly" as follows:

A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that *a wrongful act* may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.

When recklessness as to a particular result is required to establish and element of a crime, the element is also established if a person acts intentionally or knowingly as to that result.

CP at 199 (Jury Instruction 42) (emphasis added). Mason neither objected to these jury instructions nor proposed alternative wording.

### D. Closing Arguments and Verdict

In closing, the State argued that (1) Mason had "recklessly inflicted substantial bodily harm" on CM when he hit her in the face, pushed her head "through the wall," and put his hands on her throat; (2) the assault had disfigured CM's face and had give her a concussion; and (3) "the assault was more than reckless infliction of harm, but that it was intentional." 6 VRP at 564. In his closing argument, Mason admitted that he had committed fourth degree assault by pushing CM into the kitchen wall. But he argued that CM's face was bruised because the door hit her in the face and that a concussion did not amount to "substantial bodily harm" because it did not result in disfigurement.

7

The jury found Mason guilty of the lesser included offense of first degree criminal trespass, the lesser included crime of harassment, second degree assault, and third degree malicious mischief.[12] Mason appeals these convictions.

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL: RECKLESSNESS INSTRUCTION

Mason first argues that his trial counsel provided ineffective assistance in failing to object to the trial court's jury instruction defining "recklessly." He contends that this instruction misstated the law and relieved the State of its burden of proving an essential element of second degree assault. More specifically, he argues that the instruction should have referenced his knowledge of and disregard of a substantial risk of inflicting substantial bodily harm, rather than a substantial risk that a "wrongful act" may occur.[13] Br. of Appellant at 13.

A. Standards of Review

To prove ineffective assistance of counsel, Mason must show both that (1) his counsel's performance was deficient, and (2) this deficient performance prejudiced him. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To establish deficient performance, he must demonstrate that his counsel's actions fell below an objective standard of reasonableness. *State v. Townsend*, 142 Wn.2d 838, 843-44, 15 P.3d 145 (2001). To demonstrate prejudice, Mason

---

[12] The jury returned special verdicts finding domestic violence and firearm possession, which are not before us in this appeal. The jury also found Mason not guilty of (1) first degree rape, (2) first degree burglary or the lesser included offense of residential burglary, (3) unlawful imprisonment, (4) felony harassment, and (5) witness tampering.

[13] Mason does not argue that we can review this issue directly under RAP 2.5(a).

must demonstrate a reasonable probability that the outcome would have been different absent the deficient performance. *Townsend*, 142 Wn.2d at 844. Because we hold that Mason fails to demonstrate prejudice, we do not address the first, deficient performance prong of the test.

We review challenged jury instructions de novo. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). Jury instructions must inform the jury that the State bears the burden of proving each essential element of a criminal offense beyond a reasonable doubt. *State v. Peters*, 163 Wn. App. 836, 847, 261 P.3d 199 (2011). It is reversible error "to instruct the jury in a manner" that would relieve the State of this burden. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996). As a general rule, "jury instructions are sufficient when, read as a whole, they accurately state the law, do not mislead the jury, and permit each party to argue its theory of the case." *State v. Teal*, 152 Wn.2d 333, 339, 96 P.3d 974 (2004).

## B. No Prejudice

To establish prejudice here, Mason must demonstrate a "reasonable probability" that the trial's outcome (a verdict of guilty on the second degree assault charge) would have been different had the trial court instructed the jury that a person acts recklessly when he knows of and disregards a substantial risk that *substantial bodily harm* may occur. *Townsend*, 142 Wn.2d at 844. "Reasonable probability" means "sufficient to undermine the confidence in the outcome." *Strickland*, 466 U.S. at 694. We hold that Mason does not establish prejudice.

The trial court's "to convict" instruction specifically required the jury to find that Mason had "recklessly inflicted substantial bodily harm on C.M,"[14] thus, relating the "wrongful act" of the "reckless" definitional instruction[15] (slamming CM's head into the wall and hitting her in the face) to the "substantial bodily harm" element of second degree assault set forth in the "to convict" instruction.[16] Even if the trial court had instructed the jury that it must find that Mason knew of and disregarded a substantial risk that his actions may cause *substantial bodily harm*, there is no reasonable probability that the jury would have rendered a different verdict because the evidence was uncontroverted that Mason slammed CM's head into the wall hard enough to leave a dent in the wall and to cause CM to lose consciousness. Any reasonable person would understand that this type of physical force is likely to result in substantial bodily harm.[17] Because Mason fails to show that there is a reasonable probability that the outcome of the trial could have been different had the trial court given the instruction that he now advocates the trial court should have given, he does not establish prejudice; and his ineffective assistance of counsel claim fails. *Townsend*, 142 Wn.2d at 844.

---

[14] CP at 197 (Jury Instruction 40).

[15] CP at 199 (Jury Instruction 42).

[16] CP at 197 (Jury Instruction 40).

[17] RCW 9A.04.110 defines substantial "bodily harm" as follows:
    "Substantial bodily harm" means bodily injury which involves a temporary but substantial disfigurement, or which cause a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part.
A loss of consciousness is clearly a temporary but substantial loss or impairment of the function of any bodily part.

## II. INFORMATION

Mason next argues that the information was deficient because it omitted the "true threat" element of harassment. Br. of Appellant at 20. We disagree. In *State v. Allen*,[18] our Supreme Court held that "true threat" is not an essential element that the State is required to include in the information and that a charging document alleging felony harassment is sufficient if it alleges that the defendant knowingly threatened the victim. 176 Wn.2d 611, 627, 630, 294 P.3d 679 (2013). Here, the information specifically alleged that Mason knowingly threatened CM.[19] Thus, under *Allen*, the information was sufficient.

## III. EXCLUSION OF PHOTOGRAPHS

Finally, Mason argues the trial court erred in excluding two photographs on grounds that they were not relevant and not timely provided in discovery. Holding that the trial court did not err in ruling that the photographs were irrelevant, we do not address the trial court's alternative discovery violation ground for excluding them.

We review a trial court's admission of evidence for abuse of discretion. *Pirtle*, 127 Wn.2d at 648. "'A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds.'" *State v. Perrett*, 86 Wn. App. 312, 319, 936 P.2d 426 (1997)

---

[18] Our Supreme Court filed *Allen* a few weeks after Mason filed his opening brief in this appeal.

[19] The information stated in part:
> That MAXIMUS DWAYNE MASON, in the State of Washington, on or about the 4th day of May, 2011, without lawful authority, did unlawfully, *knowingly threaten* C.M. to cause bodily injury, immediately or in the future, to that person or to any other person, and by words or conduct place the person threatened in reasonable fear that the threat would be carried out[.]

CP at 21 (emphasis added).

No. 43235-8-II

(quoting *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994)), *review denied*, 133 Wn.2d 1019 (1997). Generally, we give deference to the trial court's exercise of its discretion in regard to evidentiary matters. *See State v. French*, 157 Wn.2d 593, 605, 141 P.3d 54 (2006) (citing *State v. Luvene*, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995)). Mason has the burden of proving abuse of discretion. *State v. Hentz*, 32 Wn. App. 186, 190, 647 P.2d 39 (1982), *rev'd on other grounds*, 99 Wn.2d 538, 663 P.2d 476 (1983).

The trial court excluded these photographs—of Mason and CM sharing affectionate moments several months before the May 4 incident—because they were not relevant under ER 401. ER 401 defines "relevant" evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under ER 401, evidence is not considered relevant unless it has a tendency to prove or disprove a fact that is of some consequence in the context of the other facts and the applicable substantive law. 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE, Rule 401 at 212–13 (2012–13 ed.) (citing *State v. Sargent*, 40 Wn. App. 340, 698 P.2d 598 (1985)). Stated another way, evidence is relevant if "a logical nexus exists between the evidence and the fact to be established." *State v. Burkins*, 94 Wn. App. 677, 692, 973 P.2d 15 (1999), *review denied*, 138 Wn.2d 1014 (1999). The threshold for evidentiary relevance is low: "Even minimally relevant evidence is admissible." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).

Mason argued to the trial court that these photographs were admissible because they showed that, despite their separation and CM's claim that she was finished with the relationship as early as November 2010, he and CM were still on affectionate terms when these photographs

12

were taken the following month in December 2010. But the incidents at issue here occurred several months later, in May 2011, well after the photographs were taken and well before CM made Mason move out of the family home in April 2011. Furthermore, CM never claimed that she did not still have an affectionate relationship with Mason; on the contrary, her own testimony established that they shared a bed as late as April 2011. Thus, these December 2010 photographs were both merely cumulative and irrelevant to their relationship status as of May 2011, the time of the incident at issue here.[20] Deferring to the trial court's exercise of discretion in making evidentiary rulings, we hold that the trial court did not abuse its discretion when it excluded this evidence.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Worswick, C.J.

Penoyar, J.

[20] We also disagree with Mason's assertion these photographs were relevant to whether CM had given him a key to her house. We see no abuse of discretion by the trial court in rejecting his argument that photos showing him and CM being affectionate during his birthday celebration were relevant to whether CM was or was not willing to give Mason a house key several months later.