[No. 19727-8-II. Division Two. May 9, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES PERRETT, *Appellant*.

*George A. Steele* and *Brungardt, Lowe & Associates*, for appellant.

*Gary P. Burleson, Prosecuting Attorney*, and *Eric Valley, Deputy*, for respondent.

ARMSTRONG, J. — Charles Perrett was arrested for second degree assault with a deadly weapon after he pointed a shotgun at a tenant. He was released on electronic home monitoring 39 days after his arraignment. His trial started 85 days after arraignment and concluded with a jury conviction. Perrett appeals, claiming the trial court erred by (1) denying his motion to dismiss for violation of the 60-day speedy trial rule; (2) not suppressing his statement to a deputy regarding the last time the sheriff confiscated his guns; (3) suppressing evidence of a witness' shoplifting conviction; (4) suppressing the testimony of a witness who heard the two tenants negotiate with Perrett's son about staying on the property after Perrett's arrest; (5) denying his motion for mistrial after a deputy testified that Perrett "had nothing to say" after being read his rights; (6) failing to give his proposed self-defense instruction; and (7) refusing to answer the jury's questions concerning self-defense and assault with a deadly weapon. Holding that electronic home monitoring is not "jail" time for purposes of the 60-day speedy trial rule, but that accumulated trial errors denied Perrett a fair trial, we reverse and remand for a new trial.

## FACTS

Sixty-three-year-old Charles Perrett lived in rural Tahuya, Washington. In January 1995, 35-year-old Brenda Sue Gray and 39-year-old Greg Johnston rented the lower level of Perrett's house.

In early February 1995, Gray and Johnston purchased a truck from Perrett. As part of the transaction, the parties agreed that Perrett could occasionally use the truck. On the morning of February 9, 1995, Gray and Johnston noticed the truck was gone. Johnston assumed that the truck had been stolen and called the police.

Unknown to Gray and Johnston, Perrett had driven the truck to the home of neighbors, Laura Longan and Michael Almasi. Johnston eventually found the truck and

started removing equipment from it. Perrett came out of the neighbors' house and a dispute broke out; it ended with Johnston's driving the truck back to Perrett's house.

Later that afternoon, Gray, Johnston, and Perrett were sitting at a desk in Perrett's house, arguing about the truck. At some point, they all stood up and Perrett retrieved a shotgun near his bed and demanded that the two leave.

According to Gray and Johnston, Perrett put his finger on the trigger and pointed the gun at Johnston's stomach. Johnston said the barrel of the gun touched his jacket. Gray and Johnston said they were scared. They believed the gun was loaded because Perrett had previously told them that all the guns in the house were loaded. Johnston denied making any threatening gestures.

Perrett testified that he believed Johnston had been drinking and was losing his temper. Perrett felt threatened and insisted that they leave, but they would not. After they all stood up, Gray yelled at him and Johnston, standing two or three feet away, clenched his fists and leaned towards him. Perrett got his shotgun because he thought Johnston "was going to get violent with me."[1] Perrett denied pointing the gun at Johnston, claiming he kept the barrel in the air the whole time.

Gray and Johnston immediately left the house and called the police. Responding to the call, deputies James Barrett and Kenneth Potts arrested Perrett and advised him of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 695, 10 A.L.R.3d 974 (1966). Deputy Barrett then asked Perrett if he could get the shotgun that Perrett had used earlier. The deputy testified that Perrett refused because "the last time the sheriffs took his guns, he didn't get them back."[2]

---

[1]Longan described Perrett as thin and very frail. The police report describes Perrett as 5'11" and 155 pounds. Perrett claimed to suffer from shoulder and hip disabilities.

[2]According to the police report, Perrett said, "No, the last time the Sheriff's took a weapon I didn't see it for a long time."

On February 13, 1995, Perrett was arraigned on a charge of assault in the second degree with a deadly weapon.[3] RCW 9A.36.021(1)(c). His bail was set at $15,000. He remained in jail until March 24, when the court released him on electronic home monitoring (EHM).

The March 24 order required the court's written approval before Perrett could leave Mason and Kitsap counties. But Perrett was permitted to leave his home for drug abuse treatments and to visit his attorney and probation officer. On these trips, he was allowed to grocery shop and run personal errands.

The trial was originally scheduled for April 10, 57 days after arraignment. For reasons not clear, that date was stricken, and on April 17, over Perrett's objection, the trial was set for May 8, 85 days after arraignment. The court denied Perrett's motion to dismiss for violation of the speedy trial rule, concluding that Perrett was subject to the 90-day rule under CrR 3.3(c)(1) because he was not in "jail" while on EHM.

Before trial, Perrett moved to exclude his statement to Deputy Barrett that the last time they confiscated his guns they did not return them. He also unsuccessfully attempted to introduce the following evidence: (1) Gray's Arizona conviction for shoplifting (revealed during her interview with the prosecutor and defense counsel); and (2) testimony of Perrett's caretaker that she heard Gray and Johnston negotiate with Perrett's son in an attempt to stay on Perrett's property.

During the trial, the court denied Perrett's motion for mistrial after Deputy Potts testified that, after he read Perrett his rights, Perrett "had nothing to say." The court also refused to give Perrett's proposed instruction on self-defense. Thereafter, the jury found Perrett guilty.

---

[3]The information accused Perrett of assaulting Johnston with a shotgun.

## ANALYSIS

### I

### Speedy Trial

Perrett claims that time spent on EHM should count as "jail" time for purposes of CrR 3.3. If he is correct, the charge against him must be dismissed with prejudice. CrR 3.3(i). Perrett relies on *State v. Speaks*, 119 Wn.2d 204, 829 P.2d 1096 (1992), and *State v. Parker*, 76 Wn. App. 747, 888 P.2d 167 (1995).

In *Speaks*, the Supreme Court held that under the Sentencing Reform Act (SRA), chapter 9.94A RCW, defendants are entitled to credit for time served on EHM. The court based its conclusion on the language of the SRA: "Since the legislatively enacted SRA provides for credit for 'all' confinement, and since confinement includes partial confinement, and partial confinement includes home detention, it is evident that the Legislature intended to afford a defendant credit for time served on home detention prior to sentencing." *Speaks*, 119 Wn.2d at 209.

In *Parker*, Division Three of this court held that a defendant's unauthorized departure from his residence, in contravention of a *post-conviction* home monitoring agreement,[4] constituted first degree escape from a detention facility under RCW 9A.76.110. To support its holding, the court first explained that "detention facility" was defined as "any place used for the confinement of a person" convicted of an offense. *Parker*, 76 Wn. App. at 748 (quoting RCW 9A.76.010(2)). Next, like the Supreme Court in *Speaks*, the court relied on the SRA definitions to conclude that "detention facility" included "home detention." *Parker*, 76 Wn. App. at 748.

---

[4]The agreement stated the removal of the electronic "anklet" would be a basis "for the charge of criminal intent (of escape)." *Parker*, 76 Wn. App. at 748.

■ *Speaks* and *Parker* are distinguishable. Both cases rely on the SRA's unambiguous definition of "home detention," defined as "confine[ment] in a private residence subject to electronic surveillance." *Speaks*, 119 Wn.2d at 208 (quoting former RCW 9.94A.030(31) (1989)); *Parker*, 76 Wn. App. at 748 (quoting former RCW 9.94A.030(40) (1994)). But CrR 3.3 contains no language suggesting "jail" includes "home detention." Therefore, we do not find *Speaks* or *Parker* persuasive in interpreting CrR 3.3. We look instead to CrR 3.2,[5] which permits the trial court to place conditions on the pretrial release of an accused. According to the drafters' comments, the purpose of the rule is to alleviate the hardships associated with pretrial detentions and bail: (1) defendants are handicapped in preparing their defenses; (2) defendants are unable to retain jobs and support their families; (3) defendants suffer the stigma of incarceration before their convictions; and (4) defendants suffer incarceration because they cannot afford bail. CRIMINAL RULES TASK FORCE, WASHINGTON PROPOSED RULES OF CRIMINAL PROCEDURE Rule 3.2 gen. cmt. at 22 (West 1971).

Here, Perrett's monitored home stay essentially eliminated the hardships associated with incarceration. First, although Perrett was unemployed and had no family living with him to support, at home he was free to live as he had before being charged. Second, Perrett was not

---

[5]CrR 3.2(a):

**Release in Noncapital Cases** . . . . The court shall impose the least restrictive of the following conditions that will reasonably assure that the accused will be present for later hearings, will not significantly interfere with the administration of justice and not pose a substantial danger to others or the community, or if no single condition gives that assurance, any combination of the following conditions:

(1) Place the accused in the custody of a designated person or organization agreeing to supervise the accused;

(2) Place restrictions on the travel, association, or place of abode of the accused during the period of release;

. . . .

(7) Impose any condition other than detention deemed reasonably necessary to assure appearance as required, assure noninterference with the trial and reduce danger to others or the community.

hindered in preparing his defense; he was allowed to travel to his attorney's office and could do personal errands during these trips. Third, Perrett suffered neither the stigma nor the discomfort of jail while on EHM. Thus, we conclude that Perrett's monitored home stay was more akin to a conditional release than incarceration. As such, Perrett was not subject to the 60-day rule under CrR 3.3.

## II

## Accumulated Errors

### A. Admission of Evidence

■ We review rulings on the admissibility of evidence for abuse of discretion. *State v. Pirtle*, 127 Wn.2d 628, 648, 904 P.2d 245 (1995), *cert. denied*, 116 S. Ct. 2568 (1996). "A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds." *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994).

1. Prior Confiscation of Guns

Perrett assigns error to the admission of his statement to Deputy Barrett that "the last time the sheriffs took his guns, he didn't get them back."[6] The State claimed the evidence was necessary to show Perrett's uncooperative attitude on arrest. The court admitted the statement, explaining that "[d]emeanor is always, totality of the circumstances is very important in judging the question of demeanor."

■■ But Perrett's demeanor on arrest was not relevant to any element of the charged offense. The issues in the case were whether Perrett pointed the gun at Johnston, and if so, whether he was justified by the law of self-defense in doing so. Furthermore, the statement was unfairly prejudicial; it raised the inference that Perrett had committed a prior crime involving a gun, thereby

---

[6]Johnston had previously testified that a Belfair police sergeant told him that Perrett was not supposed to possess firearms. The court struck this statement as hearsay. No error was assigned on appeal.

making it more likely he had done so again. *See State v. Fullen*, 7 Wn. App. 369, 387-88, 499 P.2d 893 (1972) (holding that prosecutor's reference to murder defendant's prior robbery conviction and familiarity with guns improper but not reversible error because corrected by court); *see also State v. Herzog*, 73 Wn. App. 34, 49, 867 P.2d 648 (1994) ("The state may not show defendant's prior trouble with the law . . . even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime.") (quoting *Michelson v. United States*, 335 U.S. 469, 475-76, 69 S. Ct. 213, 93 L. Ed. 168 (1948)); *State v. Bowen*, 48 Wn. App. 187, 196, 738 P.2d 316 (1987) ("[I]ntroduction of other acts of misconduct inevitably shifts the jury's attention to the defendant's general propensity for criminality, the forbidden inference . . . ."). We conclude the trial court abused its discretion in admitting Deputy Barrett's statement.

2. Gray's Shoplifting Conviction

Perrett assigns error to the exclusion of Gray's prior conviction for shoplifting. During an interview with the prosecutor and Perrett's attorney, Gray admitted to a shoplifting conviction in Arizona. Perrett sought to use the conviction under ER 609(a)(2) during cross examination. Absent a certified copy of the conviction, the court stated it would prohibit introduction of the evidence. "It is not uncommon for people to be confused about the status of convictions . . . ," the court explained.

 Shoplifting is a crime of theft that is per se admissible under ER 609(a)(2). *See State v. Ray*, 116 Wn.2d 531, 545, 806 P.2d 1220 (1991). And such convictions may be introduced "if elicited from the witness." ER 609(a). The court's concern that the witness might be confused about the conviction was not a reason to exclude the testimony. Moreover, nothing in the record suggests that the witness was confused — she had admitted the conviction to both the prosecutor and defense counsel. Further, there was no possible prejudice to Perrett. *See, e.g., State v. Martz*, 8 Wn. App. 192, 195-96, 504 P.2d 1174 (1973) (decided under

former RCW 10.52.030 (1983)).[7] In *Martz*, a prosecutor questioned a defendant about a prior offense without producing any record of the conviction. We held that the prosecutor's failure to produce the record was not error because the defendant had answered affirmatively. But we went on to warn that the prosecutor had risked reversible error because, in the face of defendant's specific denial of a prior conviction, the State must substantiate its question. *Martz*, 8 Wn. App. at 195-96. The concerns we raised in *Martz* are not present here. Because Gray was a nonparty witness, Perrett would not have been prejudiced by her unperfected impeachment. We conclude the trial court abused its discretion in refusing the offered testimony.

3. Testimony of Perrett's Caretaker

Perrett assigns error to the exclusion of his caretaker's testimony that she heard Johnston and Gray negotiating with Perrett's son in an attempt to stay on the property after Perrett was arrested. Perrett wished to offer her testimony to rebut assertions by Johnston and Gray that they were afraid of Perrett. The court excluded the evidence because it was not relevant. The court did not abuse its discretion because the actions of Johnston and Gray had no bearing on what they were feeling *at the time* of the incident.

### B. Right to Remain Silent

Perrett claims the court erroneously denied his motion for mistrial after Deputy Potts testified that Perrett

---

[7]Former RCW 10.52.030 (1983) provided:

Every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record thereof, or a copy of such record duly authenticated by the legal custodian thereof, or by other competent evidence, or *by his cross-examination, upon which he shall answer any proper question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer thereto.*

*Martz*, 8 Wn. App. at 195 n.3 (quoting RCW 10.52.030 (repealed 1984)) (emphasis added).

invoked his right to remain silent. Deputy Potts had just testified that Perrett smelled of intoxicants:

Q. What do you mean by intoxicants? We use that term a lot, what do you mean?

A. Well, as far as he had been drinking beer or some form of alcohol to have caused this odor.

Q. Okay. Alright. And please, I interrupted – what happened?

A. After Deputy Barrett read him his rights and he said he had nothing to say, he did ask that we . . .

MR. STEELE [Perrett's Attorney]: Excuse me, Your Honor, I'd like to bring a motion outside the presence of the jury.

The comment on Perrett's exercise of his Fifth Amendment right was improper. *See State v. Lewis*, 130 Wn.2d 700, 705, 927 P.2d 235 (1996) ("A police witness may not comment on the silence of the defendant so as to infer guilt from a refusal to answer questions."); *State v. Johnson*, 42 Wn. App. 425, 431-32, 712 P.2d 301 (1985) (holding police officer's inadvertent statement that defendant declined to discuss case after *Miranda* warnings was error but harmless). The trial judge sustained the objection, but refused to grant a mistrial. The court said he would strike the comment if Perrett desired. The court warned, however, that "to strike is to simply raise the issue to the mind of the jury." Perrett opted not to strike the comment.

## C. Conclusion

An accumulation of non-reversible errors may deny a defendant a fair trial. *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). For example, in *State v. Badda*, 63 Wn.2d 176, 385 P.2d 859 (1963), the Washington Supreme Court ordered a new trial after noting (1) the prosecutor's remarks in voir dire that the State had no choice in bringing the matter to trial once it believed a felony was committed, (2) the failure to instruct

the jury that it was not to consider a codefendant's confession as evidence against the defendant, (3) the failure to instruct the jury on the burden of proof when the State relies solely on uncorroborated accomplice testimony, and (4) the failure to instruct the jury that its verdict required unanimity. *State v. Badda*, 63 Wn.2d at 183. In *State v. Alexander*, Division One of this court reversed a judgment in which (1) a counselor impermissibly suggested the victim's story was consistent and truthful, (2) the prosecutor impermissibly elicited the defendant's identity from the victim's mother, and (3) the prosecutor repeatedly attempted to introduce inadmissible testimony during the trial and in closing. *State v. Alexander*, 64 Wn. App. 147, 158, 822 P.2d 1250 (1992). And in *State v. Whalon*, 1 Wn. App. 785, 464 P.2d 73 (1970), we concluded that the following cumulative errors provided an independent ground for reversal: (1) court's severe rebuke of the defendant's attorney in the presence of the jury, (2) court's refusal of the testimony of the defendant's wife, and (3) jury listening to tape recording of lineup in the absence of court and counsel. *State v. Whalon*, 1 Wn. App. at 804.

In light of these cases, we conclude that the following errors, while not requiring reversal standing alone, do require reversal when considered together: (1) Deputy Barrett's testimony concerning the prior confiscation of Perrett's guns, (2) the exclusion of Gray's shoplifting conviction, and (3) Deputy Pott's testimony concerning Perrett's post-arrest silence. *Coe*, 101 Wn.2d at 789; *Badda*, 63 Wn.2d at 183; *Alexander*, 64 Wn. App. at 158; *Whalon*, 1 Wn. App. at 804; *see also State v. Oughton*, 26 Wn. App. 74, 85, 612 P.2d 812 (1980) (noting cumulative error rule with approval). We reverse and remand for a new trial.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

BRIDGEWATER, A.C.J., and MORGAN, J., concur.

Reconsideration denied June 17, 1997.

Review denied at 133 Wn.2d 1019 (1997).