FILED
COURT OF APPEALS
DIVISION II

2015 JAN 21 AM 9: 05

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Respondent,<br><br>v.<br><br>KEVIN VERNON JOHNSON,<br><br>    Appellant. | No. 45178-6-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Kevin Johnson appeals his conviction for delivery of methamphetamine.[1] Johnson argues that the trial court violated the hearsay rule by admitting (1) Detective Hollinger's testimony that Victoria Stotts was Johnson's girlfriend, (2) Detective Hollinger's testimony that Wayne Blocher identified Johnson as the methamphetamine supplier, (3) Detective Landwehrle's testimony that Blocher provided the methamphetamine supplier's telephone number, and (4) Detective Hollinger's testimony that Stotts provided her own telephone number. We hold the trial court erred by admitting Detective Hollinger's testimony of Blocher's out-of-court statement identifying Johnson as the methamphetamine supplier, Detective Landwehrle's testimony of Blocher's out-of-court statement providing the methamphetamine supplier's telephone number, and Detective Hollinger's testimony of Stotts's out-of-court statement providing her own telephone number. Because this testimony provided

---

[1] Former RCW 69.50.401 (2005); RCW 69.50.206(d)(2).

almost all of the evidence supporting Johnson's identity as the methamphetamine supplier, we hold that these errors were not harmless. Thus, we reverse Johnson's conviction and remand.[2]

## FACTS

Kevin Johnson was twice tried for delivery of methamphetamine.[3] In Johnson's second trial, a jury found Johnson guilty of delivery of methamphetamine.

A. *Investigation Leading to the Charge*

1. *Methamphetamine Controlled Buys*

On April 11, 2012, Wayne Blocher contacted a group of methamphetamine dealers as part of a State criminal investigation. Outside of the detectives' presence, the dealers told Blocher their methamphetamine supplier's telephone number.

By calling the supplier's telephone number, Blocher contacted and arranged to purchase methamphetamine from the supplier, and then informed detectives. Detective Kevin Landwehrle set up a controlled buy. Detective Landwehrle provided Blocher with marked money, planning that Blocher would purchase methamphetamine from the supplier at a grocery store while Detective Landwehrle and others secretly watched from a distance.

---

[2] Johnson also argues the trial court violated the confrontation clause by admitting Detective Hollinger's testimony of (1) the fact that Stotts was Johnson's girl friend, (2) Wayne Blocher's out-of-court statement identifying Johnson as the supplier, and (3) Stotts's out-of-court statement providing her telephone number. The admission of Wayne Blocher's out-of-court statement identifying Johnson as the supplier and Stotts's out-of-court statement providing her telephone number likely violated the confrontation clause. But because we resolve Johnson's case on nonconstitutional grounds, we do not consider Johnson's constitutional confrontation clause claims. *See Brunson v. Pierce County*, 149 Wn. App. 855, 862, 205 P.3d 963 (2009) ("We avoid reaching any constitutional issues where we are able to decide the case on nonconstitutional grounds").

[3] Johnson's first trial ended in a mistrial.

Later on April 11, Blocher met the supplier at the grocery store for the controlled buy. From a distance, Detective Landwehrle saw the supplier and a female arrive at the grocery store in a vehicle, and saw the supplier exit the car and meet with Blocher. Blocher attempted to purchase methamphetamine from the supplier, but because Blocher did not have enough money to purchase as much methamphetamine as the supplier intended to sell, the deal was cancelled. When the supplier left in his vehicle on April 11, detectives followed him to a travel trailer and saw a male and a female exit the vehicle and walk toward the trailer.

Detective Landwehrle subsequently provided Blocher additional marked money, and Blocher set up a new controlled buy with the supplier; this time to occur at a gas station. At the gas station, Blocher met with and successfully purchased methamphetamine from the supplier. Detective Landwehrle saw the supplier from a distance, but did not see the methamphetamine transfer itself.

2. *Search Warrant of Trailer*

The day following the controlled buys, Detective Landwehrle drove by the trailer where detectives had earlier followed the supplier's vehicle. Detective Landwehrle saw the supplier, who was wearing the same clothes he wore during the two previous controlled buys.

Detectives obtained a search warrant for the trailer. While executing the warrant, Detective Hollinger talked to Johnson's girl friend Victoria Stotts, who was inside the trailer. In response to Detective Hollinger's request, Stotts told Detective Hollinger her telephone number. Stotts's telephone number matched the supplier's telephone number given to Blocher on April 11. The State charged Johnson with delivery of methamphetamine.

No. 45178-6-II

B.     *First Trial and Mistrial*

At Johnson's first trial, Blocher testified about the two controlled buys. Blocher provided the following testimony as to the supplier's identity:

> [State]: Is [the supplier] here in the courtroom today?
> [Blocher]: I believe so, but I—I couldn't tell you for sure.
> [State]: Okay. Why do you say you couldn't say for sure?
> [Blocher]: Well, the defendant, I'm assuming, is sitting at the table there. He doesn't look like the gentleman that I dealt with. That was eight months ago.

Ex. 44 at 8-9. Blocher also provided the following testimony:

> [State]: Do you recall, at some point, Detective Hollinger showed you a man's driver's license photo?
> [Blocher]: Several.
> [State]: Do you remember if you were able to point out the person that you'd seen at [the two controlled buys]?
> [Blocher]: I can't remember. I believe I did, but I'm not sure if it was the same day or the following day.
> [State]: But you think that at some point you pointed out the person you'd seen at [the two buys]?
> [Blocher]: Yes.

Ex. 44 at 17-18.

After the close of the evidence, the State learned that Blocher had spoken to a woman from the jail telephone. These conversations were recorded. Blocher told this woman that he did not want to testify in Johnson's trial, and the woman told Blocher that Johnson planned to change his appearance prior to trial and that Blocher should testify that he could not remember what Johnson looked like.

The trial court granted the State's motion to reopen its case to enter the recorded telephone conversations into evidence. Then, upon Johnson's motion and the State's concession, the trial court ordered a mistrial on grounds of the newly discovered evidence.

4

C.   *Johnson's Second Trial*

1. *Blocher's Partial Unavailability at Johnson's Second Trial*

At the second trial, Blocher had come to believe that the State might charge him with perjury for his testimony at Johnson's first trial about the supplier's identity. Accordingly, Blocher asserted his privilege against self-incrimination[4] to refuse to testify at Johnson's new trial. The trial court determined that it could not compel Blocher to answer any questions related to the supplier's identity or Blocher's telephone calls made in the jail, but could compel Blocher to testify concerning other matters. Blocher testified at trial, but successfully asserted his privilege against self-incrimination to avoid answering all questions related to the supplier's identity.

2. *The Detectives' Trial Testimony*

Detective Landwehrle testified at trial, and provided the following testimony as to the supplier's identity:

> [Detective Landwehrle]:  He was definitely over six feet tall.  He was kind of a heavier build.  He had long craggily hair, facial hair.  He was in his 40s, white male, and wearing dirty clothing.
> . . . .
> [State]:  Understanding you were from a distance, but does anyone in the courtroom today match the same general physical appearance as that person?
> [Detective Landwehrle]:  Yes, the defendant, Mr. Johnson, except, obviously, his hair has been cut, and his facial hair is changed.
> [State]:  But same build, same general appearance?
> [Detective Landwehrle]:  Right.

Verbatim Report of Proceedings (VRP) at 77-78, 99.  Detective Hollinger also testified at the trial.  Detective Hollinger testified of Blocher's out-of-court statement that identified Johnson as

---

[4] U.S. CONST. amend. V; WASH. CONST. art. I, § 9.

the supplier. Johnson objected to this testimony under the confrontation clause, but did not object under the hearsay rule. The State argued that the statement fell within an exception to the hearsay rule. The trial court ruled that the statement was not hearsay, "to the extent [an objection] was made," because the statement fell under ER 801(d)(1)'s exception for statements of identification.[5] *See* VRP at 220.

Next, the two Detectives testified to three additional out-of-court statements, each of which worked together to identify Johnson as the supplier.

First, Detective Landwehrle testified to Blocher's out-of-court statement conveying the dealers' out-of-court statement providing the supplier's telephone number to Blocher. Detective Landwehrle read the telephone number into the record. Johnson objected on hearsay grounds, and the trial court overruled his objection.

Second, Detective Hollinger testified that Stotts told him her telephone number. Detective Hollinger read Stotts's telephone number into the record, revealing that it was identical to the supplier's telephone number conveyed by Blocher's out-of-court statement. Johnson objected to this testimony under the hearsay rule. During a voir dire in aid of objection, Detective Hollinger stated he obtained Stotts's telephone number by asking her for it, and did not use any other method to confirm that the telephone number was Stotts's. The trial court overruled the hearsay objection, ruling that the statement was not offered to prove the truth of the matter asserted.

---

[5] The trial court reserved ruling on the confrontation objection. Trial counsel subsequently withdrew Johnson's confrontation objection without receiving the trial court's ruling on the confrontation issue.

Third, Detective Hollinger testified that he was aware of Johnson and Stotts's relationship, and that Stotts was Johnson's girl friend. Johnson objected to this testimony under the hearsay rule, arguing Detective Hollinger's knowledge that Stotts was Johnson's girl friend must have come from Stotts's out-of-court statements. The trial court overruled the hearsay objection because Detective Hollinger testified from personal knowledge, and the source of his knowledge was not part of the State's questioning.

Detective Landwehrle's testimony about Blocher's out-of-court statement conveying the supplier's telephone number and Detective Hollinger's testimony about Stotts's out-of-court statement conveying her telephone number revealed that Stotts's telephone number was the supplier's telephone number, which connected Stotts to the supplier. Detective Hollinger's testimony that Stotts was Johnson's girl friend connected Stotts to Johnson. Thus, the State used these three pieces of testimony together to connect Johnson to the supplier and support its argument that Johnson was the supplier.

### 3. Conviction and Appeal

The jury found Johnson guilty of delivery of methamphetamine. Johnson appeals.

### ANALYSIS

We review whether a statement is hearsay de novo as a question of law. *State v. Edwards*, 131 Wn. App. 611, 614, 128 P.3d 631 (2006). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Accordingly, statements are not hearsay if they are offered for some purpose other than to prove the truth of the matter asserted. *See State v. Collins*, 76 Wn. App. 496, 498-99, 886 P.2d 243 (1995). Under ER 802, hearsay is inadmissible

unless it comes within an exception established by statute or common law. *State v. Kirkpatrick*, 160 Wn.2d 873, 881, 161 P.3d 990 (2007).

## I. ERRONEOUS ADMISSION OF HEARSAY

A.    *Testimony that Stotts was Johnson's Girl Friend*

Johnson argues that admitting Detective Hollinger's testimony that Stotts was Johnson's girl friend violated the hearsay rule because Detective Hollinger's knowledge of Stotts's relationship with Johnson must have been based on Stotts's out-of-court statements. The State argues that nothing in the record supports that the basis of Detective Hollinger's knowledge was a statement. We agree with the State.

Hearsay excludes only out-of-court statements. *See* ER 801(c). Detective Hollinger testified based on his personal knowledge that Stotts was Johnson's girl friend. Detective Hollinger did not testify as to how he acquired that personal knowledge about Stotts's and Johnson's relationship, and thus, did not testify to any out-of-court statement by Stotts or anyone else.[6] Because Detective Hollinger did not testify to any statement, and nothing in the record supports that a statement provides the basis for Detective Hollinger's knowledge that Stotts was Johnson's girl friend, admitting Detective Hollinger's testimony as to Stotts's relationship with Johnson did not admit an out-of-court statement, and thus, did not violate the hearsay rule.

---

[6] Johnson did not voir dire Detective Hollinger on this point.

No. 45178-6-II

B.    *Testimony of Blocher's Statement Identifying Johnson as the Supplier*

In his statement of additional grounds (SAG), Johnson argues that the trial court erred by admitting, under ER 801(d)(1)'s hearsay exemption, Detective Hollinger's testimony of Blocher's out-of-court statement identifying Johnson as the supplier. We agree.

ER 801(d)(1) states that a statement is not hearsay if

> [t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving the person.

Here, Blocher asserted his privilege against self-incrimination to avoid answering questions concerning the supplier's identity. Thus, Blocher was not subject to cross-examination concerning his out-of-court statement identifying Johnson, as required by ER 801(d)(1). The trial court erred by admitting Detective Hollinger's testimony of that out-of-court statement.

C.    *Testimony of Blocher's Out-of-Court Statement Conveying the Supplier's Telephone Number*

Johnson argues that admitting Detective Landwehrle's testimony of Blocher's out-of-court statement conveying the supplier's telephone number violated the hearsay rule because it was offered to prove the truth of the matter asserted within Blocher's out-of-court statement. The State argues that Detective Landwehrle's testimony of Blocher's out-of-court statement was admitted to support not that the telephone number was the supplier's telephone number, but rather that the telephone number was connected to the supplier. We agree with Johnson.

A statement that a telephone number is a particular individual's telephone number is a statement that that telephone number is connected to that particular individual. Thus, Blocher's out-of-court statement that the telephone number was the supplier's telephone number was a statement that the telephone number was connected to the supplier. Because Detective

9

Landwehrle's testimony of this statement was offered to prove that the telephone number was connected to the supplier, it was offered to prove the truth of the matter asserted. Because no hearsay exception applies, the admission of Blocher's statement violated the hearsay rule.[7]

D.      *Testimony of Stotts's Out-of-Court Statement Conveying her Telephone Number*

Johnson argues that Detective Hollinger's testimony of Stotts's out-of-court statement conveying her telephone number violated the hearsay rule because the statement was offered to prove the truth of the matter asserted. We agree.

As discussed above, a statement that a telephone number is a particular individual's telephone number is a statement that that telephone number is connected to that particular individual. Thus, Stotts's out-of-court statement that the telephone number was Stotts's telephone number was a statement that the telephone number was connected to Stotts. Because Detective Hollinger's testimony of this statement was offered to prove that the telephone number was connected to Stotts, it was offered to prove the truth of the matter asserted. Because no hearsay exception applies, the admission of Stotts's statement violated the hearsay rule.

## II. HARMLESSNESS

Johnson argues the erroneous admissions of hearsay were not harmless under the evidentiary standard. We agree.

---

[7] Johnson correctly asserts that this is double hearsay because the trial court erroneously admitted the drug dealer's out-of-court statement through Blocher's out-of-court statement. But because the trial court erred by admitting Detective Landwehrle's testimony of Blocher's out-of-court statement, we do not consider whether the trial court erred by admitting the drug dealer's out-of-court statement through Blocher's out-of-court statement.

Evidentiary error does not warrant reversal of a conviction unless it prejudices the defendant. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). Evidentiary error is not prejudicial unless, within reasonable probabilities, the trial's outcome would have differed had the error not occurred. 133 Wn.2d at 403. "Improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the evidence as a whole." *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). But an accumulation of errors that do not individually require reversal may still deny the defendant a fair trial. *State v. Perrett*, 86 Wn. App. 312, 322, 936 P.2d 426 (1997).

Here, the error is not harmless. Johnson's entire case turned on the supplier's identity. The inadmissible hearsay admitted in this case (Blocher's out-of-court statement conveying the supplier's telephone number, Stotts's out-of-court statement conveying her telephone number and Blocher's statement identifying Johnson as the supplier) provided most of the evidence establishing the supplier's identity. Without that evidence, all that remained to support identity is Detective Landwehrle's identification of Johnson as the supplier. But Detective Landwehrle stated only that Johnson had the "same general appearance" as the supplier, not that Johnson was the supplier. VRP at 99. Furthermore, Detective Landwehrle admitted that he saw Johnson from only a distance, and admitted that Johnson's hair and facial hair were different from what he saw on the supplier during the controlled buys. Thus, within reasonable probabilities, the trial's outcome could have differed had the error not occurred. Therefore, the error was prejudicial.

No. 45178-6-II

We reverse and remand for further proceedings consistent with this opinion.[8]

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Melnick, J.

---

[8] Johnson filed a SAG. We considered the argument in Johnson's SAG that the trial court violated the hearsay rule by admitting Detective Hollinger's testimony of Wayne Blocher's out-of-court statement identifying Johnson as the supplier. But because we reverse Johnson's conviction, we do not consider the remaining issues within his SAG.