# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
)    No. 76023-8-I
        Respondent, )
)    DIVISION ONE
    v. )
)    UNPUBLISHED OPINION
SHANE MARTIN JONES, )
)
        Appellant. )    FILED: January 17, 2017

TRICKEY, A.C.J. — Shane Jones appeals his conviction for burglary and theft. Jones argues that the trial court abused its discretion by admitting evidence under ER 404(b) that he was suspected of shoplifting. Specifically, Jones contends that the State did not show by a preponderance of the evidence that he committed the prior bad act or that the prejudicial effect of admitting the evidence outweighed its probative value. We disagree. There was sufficient evidence tying Jones to the shoplifting and the probative value of the evidence was high because it helped identify Jones. We affirm.

## FACTS

Dylan Parrish worked as a mobile mechanic for Olympic Pharmacy, located in Gig Harbor, Washington. When not working, Parrish left his van in the parking lot next to Olympic Pharmacy's warehouse. There are several surveillance cameras focused on the parking lot and the building itself. The parking lot was fenced in on all sides. At the end of 2014, Parrish left his van in the parking lot for the holidays.

When Parrish returned to work on January 5, 2015, he noticed that someone had broken into the van. The van had been ransacked, and several

valuable tools were missing. After learning of the theft, the general manager of Olympic Pharmacy reviewed the security footage from the parking lot. He discovered the footage showed someone coming into the parking lot and removing property. The person in the video was wearing a blue plaid jacket, over a gray hooded sweatshirt, and light colored pants.

The general manager reported the incident to the Gig Harbor Police Department. He gave a detective from Gig Harbor a copy of the surveillance footage. A deputy in the Pierce County Sheriff's Department saw a bulletin about the Olympic Pharmacy burglary with a still photograph from the surveillance video. The deputy recognized the suspect as Jones, with whom he had previously interacted.

On January 2, 2015, three days before the burglary was discovered, Deputy Dave Plummer of the Pierce County Sheriff's Department had contact with Jones. Deputy Plummer knew Jones by sight and was able to positively identify him. Another witness, Mavis MacFarlane, was present for most of Deputy Plummer's contact with Jones. Jones was wearing khaki pants and a blue shirt.

That same day, an Albertsons grocery store employee observed a customer leave the store without paying for his items. She observed that he was wearing a hood over his head, a blue jacket, and khaki colored cargo pants. She ran after him and noted the license plate number of the vehicle he entered. A Gig Harbor police officer responded to the report from Albertsons. The officer determined that the vehicle belonged to Aaron Jones, Jones's brother. The officer also obtained security footage from Albertsons.

2

The State charged Jones with burglary and theft, stemming from the Olympic Pharmacy incident. The trial court admitted the Albertsons security footage as evidence to prove identity under ER 404(b). The court instructed the jury that it should consider the evidence related to the Albertsons incident "only for the purpose of evaluating the identity of the alleged burglar at the Olympic Pharmacy."[1] Jones did not object to the wording of the limiting instruction.

At trial, MacFarlane testified that Jones was wearing khaki or light colored pants and a dark blue or black heavy shirt with a subtle plaid pattern when she saw him on January 2, 2015; Deputy Plummer could not remember what Jones had worn. Viewing a still photograph from the surveillance footage at Olympic Pharmacy, MacFarlane testified that the suspect's clothing was consistent with the clothes Jones was wearing on the day she met him.

The jury found Jones guilty on both charges. Jones appeals.

ANALYSIS

Prior Bad Acts

Jones argues that the trial court abused its discretion by admitting evidence that he was involved in a shoplifting incident at Albertsons within days of the burglary at Olympic Pharmacy. The court admitted the evidence under ER 404(b) for the purpose of proving Jones's identity. Jones contends that the evidence was more prejudicial than probative and that the State did not establish by a preponderance of the evidence that he was the suspect at the Albertsons. We disagree and hold that the trial court's consideration of both factors was within its

---

[1] Report of Proceedings (RP) (Oct. 22, 2015) at 214.

discretion.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . . identity." ER 404(b). Before admitting evidence of prior misconduct, the trial court must

> "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (quoting State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

We review evidentiary decisions for abuse of discretion. State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). A court abuses its discretion if the decision is manifestly unreasonable or based on untenable grounds or reasons. Thang, 145 Wn.2d at 642.

Here, the trial court admitted evidence that Jones was suspected of shoplifting from Albertsons. The evidence included security footage from inside the store and testimony from both the Albertsons employee who observed him and the police officer who responded to the employee's report. The court recognized that the evidence was being offered to establish Jones's identity, and found by a preponderance of the evidence that Jones was the suspect in the Albertsons incident. The court determined that the evidence was relevant because the clothing worn by the individual in the Albertsons security footage was distinct and matched the clothing worn by the suspect in the Olympic Pharmacy burglary.

Finally, the court determined that, with the proper limiting instruction, the prejudicial effect of the evidence would not outweigh its probative value.

Jones argues that the trial court abused its discretion because there was not a preponderance of evidence that Jones was the person at Albertsons and because the prejudicial impact of the evidence far outweighed its probative value.[2]

First, the State's proof that Jones was the man at Albertsons was sufficient. The State offered evidence that a man matching Jones's description, wearing distinct clothes that matched what another witness saw Jones wearing that day, walked out of Albertsons and entered the passenger side of a vehicle owned by Jones's brother.[3] This is enough to show that Jones was the person in the Albertsons surveillance footage by a preponderance of the evidence.

Second, the risk of prejudice to Jones did not substantially outweigh the probative value. The probative value was high. The jurors could compare the distinct clothing worn by the suspects at Olympic Pharmacy and Albertsons. The similarity of the clothing made it more likely that one person committed both acts. The State provided evidence that tied Jones to the incident at Albertsons. Therefore, if the jurors believed that Jones was the man at Albertsons, they were more likely to believe that Jones was the man at Olympic Pharmacy.

The trial court acknowledged the potential that Jones would suffer unfair prejudice from the jurors learning that an Albertsons employee suspected Jones of another theft, but the court did not consider the evidence "particularly

---

[2] Jones does not challenge the propriety of admitting this type of evidence to prove identity.
[3] Jones suggested that the person in Albertsons could have been his brother Aaron, but, unlike Jones, Aaron did not match the description because Aaron has light hair and the Albertson's security footage showed a man with dark hair and dark facial hair.

5

inflammatory."[4] The court noted that there would be no argument about whether Jones actually shoplifted from Albertsons, and that jury would be instructed to consider the evidence only for the purpose of establishing Jones's identity. The trial court's assessment of the prejudicial effect of the evidence was not manifestly unreasonable.

Jones argues that the potential for prejudice was especially high because both crimes involved theft. But Jones relies on cases that discuss the admissibility of prior convictions for impeachment purposes under ER 609, not ER 404(b). See State v. Calegar, 133 Wn.2d 718, 722-23, 947 P.2d 235 (1997); State v. Pam, 98 Wn.2d 748, 761-62, 659 P.2d 454 (1983) (Utter, J., concurring), overruled by State v. Brown, 111 Wn.2d 124, 761 P.2d 588 (1988); State v. Newton, 109 Wn.2d 69, 75-76, 743 P.2d 254 (1987). Evidence of criminal convictions is admissible under ER 609 only for the "purpose of attacking the credibility of a witness in a criminal or civil case." ER 609(a). In contrast, under ER 404(b), the party seeking to offer the evidence of prior bad acts must establish the evidence's purpose and relevance to the specific case.

Jones also relies on State v. Perrett, 86 Wn. App. 312, 319-20, 936 P.2d 426 (1997). There, the court held it was error to admit a defendant's statement that implied he had similar convictions because the statement, and the circumstances surrounding the statement, were "not relevant" to the charged crime. Perrett, 86 Wn. App. at 319-20. Here, the evidence was relevant to establish Jones's identity.

---

[4] RP (Oct. 20, 2015) at 108-09.

Finally, Jones argues that the State could have sanitized the evidence so that the jury would not hear that the Albertsons employee suspected Jones of shoplifting. The parties discussed this possibility below. The State expressed concern that its lay witness might accidentally reveal details about the shoplifting or that her story would not be reliable unless the jury understood why she had observed Jones. The court concluded that limiting the Albertsons employee's testimony would unfairly prejudice the State. We agree.

The trial court's decision to admit the evidence related to the incident at Albertsons was not an abuse of discretion.

### Statement of Additional Grounds for Review

Jones raises two additional grounds for review in his pro se brief. Neither merits reversal.

First, Jones argues that the court should have suppressed any evidence obtained from an illegal Terry stop, including witnesses' testimony identifying him, as fruit of the poisonous tree.[5] He also argues that he received ineffective assistance of counsel because his trial counsel failed to move to suppress this evidence.

The State conceded that the stop was improper and agreed to suppress all physical evidence seized during the stop. But the State still sought to have Deputy Plummer testify about the clothing Jones was wearing at the time. The court concluded that the State could have Deputy Plummer identify Jones and have MacFarlane testify about what Jones was wearing at the time.

---

[5] Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)

It is not apparent from the record what action the officer took that made the Terry stop illegal. Without a clearer record, we cannot review whether all testimony regarding the improper stop, including Jones's contact with the State's witnesses, should have been suppressed or whether Jones received ineffective assistance of counsel when his trial counsel did not move to suppress it. See RAP 10.10(c).

Next, Jones argues that the "identification of Mr. Jones at trial by Mavis MacFarlan[e] should have been excluded. The State's presentation of photograph[s] to MacFarlan[e] for identification of Mr. Jones was suggestive and prejudicial."[6] This brief objection is not sufficient to inform the court of the nature of the alleged error. See RAP 10.10(c).

First, MacFarlane did not use a photograph to identify Jones; she based her identification on her personal observations of him on January 2, 2015. Second, MacFarlane did use a photograph to testify that the suspect's clothes at the Olympic Pharmacy were "consistent" with the clothes that Jones was wearing when she met him, but did not identify Jones from that photograph. Finally, before MacFarlane testified, the court limited the State to asking her how the clothing worn by the person in the photograph compared to the clothing Jones wore in "neutral" ways, in order to "avoid suggestibility."[7]

### Appellate Costs

Jones asks that this court not impose appellate costs, even if the State substantially prevails. The State argues that deciding whether to impose costs at this point is premature. Relying on this court's opinion in State v. Sinclair, we

---

[6] Appellant's Statement of Add'l Grounds for Review at 1.
[7] RP (Oct. 26, 2015) at 263-64.

exercise our discretion not to impose appellate costs. 192 Wn. App. 380, 389-90, 367 P.3d 612, review denied, 185 Wn.2d 1034, 377 P.3d 733 (2016).

This court may impose appellate costs on a criminal defendant when the State substantially prevails. RCW 10.73.160(1). But, the court has the discretion to deny costs. Sinclair, 192 Wn. App. at 388; see also In re Pers. Restraint of Flippo, __ Wn.2d __, 385 P.3d 128 (2016). It "is appropriate for this court to consider the issue of appellate costs in a criminal case during the course of appellate review when the issue is raised in an appellant's brief." Sinclair, 192 Wn. App. at 389-90.

Here, the trial court chose not to impose any discretionary legal financial obligations because Jones had no savings, was unemployed, and had no property or other resources. Similarly, in his motion to seek review at public expense, Jones declared that he was unemployed and had no assets or savings.

Because of Jones's indigency, we exercise our discretion not to impose appellate costs.

Affirmed.

Trickey, A.C.J.

WE CONCUR:

Mann, J.

Leach, J.

9