# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 81838-4-I |
| Respondent, | |
| v. | DIVISION ONE |
| JAY MARIA CHRISTENSEN, | UNPUBLISHED OPINION |
| Appellant. | |

APPELWICK, J. — Christensen challenges multiple convictions stemming from two robberies. He argues the State did not prove harassment beyond a reasonable doubt. He also argues the trial court erred in admitting evidence of his past drug use. He further argues the prosecutor elicited impermissible testimony related to uncharged robberies. He argues the prosecutor rearraigned him with additional charges in retaliation for him seeking trial, tampered with a witness, and elicited false testimony. He argues evidence should have been suppressed due to chain of custody issues. We affirm.

## FACTS

On September 15, 2016, a man robbed a Shell gas station in Gig Harbor with a short-barreled shotgun. The man was wearing a red and black jacket, athletic shoes, and had a blue bandana covering his face. He wore at least one blue glove, apparently made of a latex-like material. The man demanded money from the register, placed the money in his pocket, and left the store. The suspect

had arrived in a tan sedan with what appears to be blue tape covering the license plate. The car appeared to have a handicapped placard handing from the rearview mirror. Police later recovered a ball of blue tape from the scene. A latent fingerprint was recovered from the tape. Investigators determined the print matched prints from Jay Christensen.

On October 19, 2016, Christensen got a call from a friend who was at a local Denny's restaurant informing him that the cash register was full and there were very few people in the restaurant. Christensen got Steven Sommer, who lived in a trailer on the same property as Christensen, to drive him to the Denny's.

Sommer claims that Christensen asked him for a ride to get cigarettes, but once they were in the truck, Christensen hit him with a shotgun and forced him to drive to the Denny's. Christensen's girlfriend Sandra Whitehead, who also lived at the property, testified that Sommer willingly agreed to drive Christensen to the Denny's so he could rob the restaurant.

Christensen arrived at the Denny's and entered the store with a short-barreled shotgun. He was wearing a black jacket and had a white bandana covering his face. He approached the clerk at the register and demanded money from the till and valuables from people in the restaurant. The clerk refused to take belongings from restaurant patrons, instead proceeded to try and open the till. The clerk's hands were shaking so she had trouble opening the till. Christensen responded by counting down from 10 and telling the clerk he would kill her and would start killing Denny's customers.

Two patrons sitting at a table nearby witnessed the robbery. The two moved so as not to be in Christensen's line of sight because they realized a robbery was taking place. They told a cook to call 911. One patron testified that she heard Christensen tell the clerk that he would start killing people if he didn't get money. She testified that they saw Christensen had a gun and decided to "get out of there" because "it wasn't worth [their] life." The two eventually hid in a closet until police arrived.

Once the clerk opened the register, Christensen took money and left the restaurant. He got into the passenger side of the waiting truck and drove away.

Police responded to a call of an armed robbery at the Denny's. They observed a truck leaving the area. Officers pursued the truck. After some pursuit, the truck crashed into a cement pillar.

Officers then pinned the vehicle against the pillar to prevent its escape. Officers yelled commands to the truck's occupants to put their hands up and drop any weapons. The driver attempted to comply with these demands, but the passenger was grabbing the driver and pushing him around in his seat and screaming at him. Officers saw the passenger holding a gun and pointing it at the driver. An officer then shot the passenger in the head. The passenger survived the gunshot wound and was taken to the hospital for care. Officers were later able to identify Christensen as the passenger. Sommer testified to being the driver. He testified that Christensen forced him to flee the police but that he had intentionally crashed to end the chase.

Police conducted a search of Christensen's trailer. They recovered shoes similar to those worn by the robber of the Shell station. They also recovered a box of blue latex gloves similar to those worn by the Shell robber, a blue bandana similar to that worn by the Shell robber, and shotgun shells. They also discovered a tan sedan with a handicapped parking placard on the property, similar to the one used in the Shell robbery. Police found blue masking tape in the trunk of the car.

The State charged Christensen with two counts of robbery in the first degree, two counts of unlawful possession of a firearm, two counts of unlawful possession of a short barreled shotgun, two counts of harassment, kidnapping in the first degree, attempting to elude a police vehicle, assault, and obstructing a law enforcement officer. A jury found him guilty on all counts except one harassment count.

Christensen appeals.

## DISCUSSION

Christensen makes eight arguments: the first three in his opening brief and the remaining five in his statement of additional grounds. First, he argues the State failed to prove its claim of harassment of Denny's customers beyond a reasonable doubt. Second, he argues that the trial court improperly admitted evidence of his past drug use. Third, he argues that the trial court erred in allowing the State to elicit testimony concerning uncharged robberies. Fourth, he argues that the State vindictively rearraigned him with additional charges in retaliation for his choosing to go to trial. Fifth, he argues the State committed misconduct by intimidating Whitehead, a witness in the case. Sixth, he argues the State elicited false

4

testimony from Steve Sommer. Seventh, he argues the trial court improperly allowed evidence to be admitted that was improperly collected and had a broken chain of custody. Last, he argues that cumulative error deprived him of his right to a fair trial.

I. Substantial Evidence

Christensen argues that the State failed to prove that he harassed Denny's customers other than the clerk. To prove this charge, the State needed to prove that Christensen knowingly threatened to injure a person in Denny's without lawful authority, and that the person was placed in reasonable fear that the threat would be carried out. RCW 9A.46.020(1). Christensen argues that the State failed to prove that any patron who heard Christensen's threat was actually in fear that he would carry it out.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Such a challenge admits the truth of the State's evidence and all inferences that can reasonably be drawn therefrom. Id. All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. Id.

Here, a Denny's patron testified that she overheard Christensen's threat to kill people in the restaurant. She testified that she moved because "it wasn't worth [her] life." She further testified that she hid in a closet until police arrived. That the patron was afraid for her life is a reasonable inference that must be drawn and

interpreted most strongly against Christensen. A rational trier of fact could easily conclude that the patron was afraid for her life.

Christensen's challenge is limited to whether the patron was placed in fear. His challenge fails.

II. Evidentiary Rulings

Christensen argues the trial court erred in admitting evidence of his drug use. The State argues the evidence was permissible to establish motive and to impeach the credibility of Whitehead, whom it argues was likely to testify favorably to Christensen because she felt guilty for introducing him to heroin. Christensen also argues the State impermissibly elicited testimony regarding uncharged robberies.

Evidence of prior bad acts is inadmissible to prove propensity to commit other bad acts. ER 404(b). It may, however, be admissible for other purposes, such as to show motive. ER 404(b). Evidence of prior bad acts is admissible if its probative value is not substantially outweighed by the danger of unfair prejudice. ER 403. We review a trial court's decision on the admissibility of evidence for abuse of discretion. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). A trial court abuses its discretion if its decision is manifestly unreasonable or is based on untenable grounds or reasons. Id.

The trial court here found that evidence of Christensen's drug use was probative because it tended to show his motive for committing the robberies. Whitehead testified that she had introduced him to heroin. She testified that her and Christensen's drug habit cost about $200 per week. She testified that they

spent about $300 per month on rent and had additional food expenses. She testified that both she and Christensen had been laid off and were receiving unemployment benefits. But, she testified that they were not experiencing financial hardship. However, she earlier told a detective that the two were spending all their money on heroin.

Christensen argues that there was ample evidence in the record of his financial hardship without referring to their heroin use. But, Whitehead denied this so there was also evidence that they were not experiencing financial hardship. In light of Whitehead's denial that she and Christensen were experiencing financial hardship, evidence that the two were spending $200 per week on heroin was probative of their financial troubles. And, it is reasonable to believe that Whitehead, having introduced Christensen to heroin, might be motivated to testify in a way that was more favorable to him. While there is undeniably some prejudice associated with drug use, the trial court mitigated this by instructing the jury to consider the evidence for only motive and Whitehead's potential bias. We therefore find that the trial court's decision was not manifestly unreasonable and was not an abuse of discretion.

Christensen also claims that the prosecution impermissibly elicited testimony that he committed uncharged robberies. The State questioned Whitehead about a statement from her that the two argued about Christensen's robberies. Christensen argues that the reference to multiple robberies implied that there were robberies that had not been charged. But, Christensen was charged with multiple robberies in this case. Therefore, in the light most favorable to the

7

state, this testimony is most reasonably understood as referring to those robberies that he was charged with. No improper testimony was elicited.

III. Prosecutorial Vindictiveness

Christensen argues the prosecutor vindictively rearraigned him with additional charges in retaliation for him exercising his right to go to trial. He argues this is so because the prosecutor brought several additional charges after he rejected a plea deal. Prosecutors may not punish the defendant with additional charges solely for exercising their right to trial. See United States v. Goodwin, 457 U.S. 368, 372, 102 S. Ct. 2485, 73 L. Ed .2d 74 (1982) (prosecutors may not punish defendants for exercising their rights). However, we do not presume a prosecutor's additional charges are vindictive absent any evidence of vindictiveness. See id. at 380-81. This is in part because the prosecutor may discover additional information that suggests a basis for further charges prior to trial. Id. at 381.

Such was the case here. Christensen acknowledges that the additional charges in this case were precipitated by Sommer agreeing to testify against Christensen. This cooperation enabled the prosecution to charge several crimes that would have previously been difficult to prove, such as the kidnapping of Sommer.

Not all the additional charges can be traced to Sommer's cooperation. For example, the State added two charges for unlawful possession of a short barrel shotgun. But, Christensen has not presented any evidence that the prosecutor brought those charges vindictively. He argues that we should presume

8

vindictiveness because the additional charges were brought after failed plea negotiations. The Supreme Court has directed caution in applying such a presumption in the absence of evidence. Id. at 381.

We reject Christensen's claim because he has shown no evidence of actual vindictiveness and because legitimate reasons for additional charges can be shown from the record.

IV. Prosecutorial Misconduct

Christensen argues that the prosecutor committed misconduct by tampering with Whitehead's testimony and accepting false testimony from Sommer.

Christensen argues that the prosecutor tampered with Whitehead's testimony by playing recordings of Christensen's jail calls with another woman and asking if she was sure that she was Christensen's girlfriend. It was Christensen who elicited testimony from Whitehead regarding the interaction. He claims this was done to influence Whitehead to change her testimony. But, Christensen does not claim that the prosecutor ever asked Whitehead to change her testimony. The identity of the woman on the calls was of legitimate interest to prosecutors. Whether Whitehead was protecting Christensen due to her relationship with him was of legitimate interest to the prosecution. It was reasonable for the prosecutor to ask Whitehead about the calls. Christensen cites to no authority that supports the proposition that a legitimate line of questioning can be considered prosecutorial misconduct.

Christensen further argues that the prosecution elicited false testimony from Sommer. He offers only conflicting testimony from Whitehead, his own bare assertion, and the fact that Sommer was initially charged in the robberies before agreeing to cooperate with the State, to prove that the testimony is false. Christensen has the burden to prove the testimony was actually false. See United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003). He has not met that burden.

V. Chain of Custody

Christensen argues that the ball of blue tape recovered from the Shell gas station should not have been admitted because of issues with the chain of custody of that evidence. He points out that the officer who collected the tape claimed to have left his glove in the bag with it, but subsequent handlers of the evidence reported no glove. He takes issue with improper recording of dates on the evidence log and discrepancies with the memory of those who handled and collected the evidence.

Minor discrepancies and uncertainty on the part of witnesses generally go to the weight of evidence, not admissibility. State v. Campbell, 103 Wn.2d 1, 21, 691 P.2d 929 (1984). The identity and condition of evidence are always subject to rebuttal, and the jury is free to disregard evidence if it finds that it was not properly identified or there has been a change to its character. Id. The trial court has a wide latitude of discretion in determining admissibility, which will not be disturbed absent clear abuse. Id.

10

Christensen concedes that he was permitted to elicit testimony regarding issues with the chain of custody and condition of the evidence. The trial court therefore properly allowed the jury to weigh the evidence it needed to disregard the evidence if it so chose. It did not abuse its discretion in admitting the evidence.

VI. Cumulative Error

Christensen argues that cumulative error deprived him of his right to a fair trial. An accumulation of non-reversible errors may deny a defendant a fair trial. State v. Perrett, 86 Wn. App. 312, 322, 936 P.2d 426 (1997). Because we find no errors occurred, the doctrine of cumulative error is inapplicable here.

We affirm.

_Appelwick, J._

WE CONCUR:

_Chun, J._          _Leach, J._