[No. 3582–II.   Division Two.   April 30, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. ARTHUR
JAMES OUGHTON, *Appellant.*

*David D. Gordon,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

REED, C.J.—Arthur James Oughton appeals his conviction of first–degree murder. He does not challenge the sufficiency of the evidence presented against him but claims several procedural errors individually or cumulatively deprived him of a fair trial.

We reverse on the basis of the analysis set forth below.

■ As defendant's appointed counsel on appeal pointed out in oral argument, no matter how incredible a given defendant's story may sound, due process entitles him to a fair chance to get his version of the events before the jury so that they may make an unprejudiced decision. Because we are unable to say from the record before us whether the defendant would or would not have been convicted but for several errors which occurred at trial, we reluctantly

reverse. *State v. Martin,* 73 Wn.2d 616, 627, 440 P.2d 429 (1968), *cert. denied,* 393 U.S. 1081, 21 L. Ed. 2d 773, 89 S. Ct. 855 (1969).

Arthur Oughton and Joyce Johnson had lived together for about 7 months in 1977. The defendant moved out in October but, in spite of his having assaulted her with his fists at Christmas time, the couple continued to see each other on an intimate basis. Mrs. Johnson was a widow with four adult sons. The sons showed varying degrees of animosity toward the defendant. After the Christmas incident, the animosity became outright hostility and the sons threatened the defendant. The couple continued to see each other despite the sons' hostility, but the relationship continued to deteriorate.

Determined, he says, to settle the situation once and for all, on the evening of Saturday, January 15, 1978, the defendant let himself into Mrs. Johnson's home and waited 5 hours for her return. They began discussing the relationship. According to the defendant, he took out a sheath knife (which he carried because he was afraid of the sons) and banged on the kitchen table to emphasize what he was saying. He declared that if the boys would not leave him alone, somebody was going to get hurt. The defendant says Mrs. Johnson answered that if someone was going to get hurt, that included her, too. With that, she grabbed the defendant's knife hand and pulled the knife into her chest twice. One wound was superficial, the other, fatal.

After the stabbing, the defendant says he tried to telephone for help but stopped dialing and left the house because he thought one of the sons had arrived. Forty-five minutes later he was arrested in a telephone booth while talking to the emergency operator. He said he wanted someone to go to the victim's home "to see if she's all right" and admitted he wanted to give himself up.

## OPINIONS REGARDING DEFENDANT'S TRUTHFULNESS

The first issue defendant raises relates to allowing a detective to testify about his opinion of defendant's truthfulness.[1]

The court had already permitted an exchange in which the defense counsel was allowed to ask similar questions of another police officer.[2]

■ Without delivering a lengthy treatise on opinion evidence, we note this court has "recognized the impropriety of admitting the opinion of any witness as to guilt by direct statement or by inference . . ." *State v. Haga,* 8 Wn. App. 481, 492, 507 P.2d 159, *review denied,* 82 Wn.2d 1006 (1973). Because this entire case turned on defendant's credibility, such questions are all the more suspect. However, defendant "opened the door" to this subject with his own question. He will not now be heard to complain of the prosecution's use of substantially the same words to rebut the earlier testimony. 5 Wash. Prac. § 323 (1965); *State v. King,* 58 Wn.2d 77, 78, 360 P.2d 757 (1961); *State v. Atkinson,* 19 Wn. App. 107, 112, 575 P.2d 240 (1978).

## DENIAL OF CONTINUANCE

By the date of the omnibus hearing, less than a week before trial, the prosecuting attorney had not yet supplied the defendant with the substance of oral statements it had obtained from the victim's sons, Terry and Danny

---

[1]Defendant's statement to the detective outlined the facts of the stabbing itself as we have reported here. The detective was permitted to testify as follows in response to a question from the deputy prosecutor:
Q Were you able to observe whether or not he was giving you a true version of what had occurred?
A Well, I questioned that in my mind.

[2]This first exchange, during cross-examination of the witness, reads as follows:
Q Did he appear to be truthful in his answers [to the interviewing detective's questions], from your observation?
. . .
A I suppose so.

Johnson.[3] The sons having refused to speak with defense counsel, the court ordered them to grant interviews in the prosecutor's office the next day. The prosecutor also gave defense counsel written statements from the witnesses.

At 11 a.m. on the third day of trial, Terry Johnson for the first time gave the prosecutor additional information which has resulted in this assignment of error. Terry Johnson said that, shortly after his mother's death, he looked through her clothes and found they had been slashed or cut and spray–painted gold. The prosecuting attorney did not inform defense counsel or the court of this new information. It was revealed only when Terry Johnson testified at 2:20 that afternoon. The defendant objected to the testimony on grounds of relevance and surprise and because the information had not been supplied pursuant to the discovery rules.

Rejecting the claim of surprise, the trial court noted defense counsel had had sufficient opportunity to elicit the information himself during his interview with the witness and had not done so. The trial court also overruled the relevance objection. Finally, the court denied the motion for a continuance.

The prosecution made no effort to present evidence directly connecting the slashed clothing either to the defendant or with the death of the victim or to explain why the police had not uncovered this evidence in their thorough search for the murder weapon. The prosecutor did,

---

[3]CrR 4.7(a) requires the prosecuting attorney to provide "no later than the omnibus hearing:

"(i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with any written or recorded statements *and the substance of any oral statements of such witnesses*;" (Italics ours.)

CrR 4.7(h)(2) further provides:

"*Continuing duty to disclose.* If, after compliance with these standards or orders pursuant thereto, a party discovers *additional material or information* which is subject to disclosure, he shall *promptly* notify the other party or his counsel of the existence of such additional material, and if the additional material or information is discovered *during trial,* the court shall also be notified." (Italics ours.)

however, rely on this testimony in closing argument with three suggestive references.

The State argues that no error occurred. We disagree. This court has declared that "promptly" in CrR 4.7(h)(2) means at the moment of discovery or confirmation, even when that occurs during trial. *State v. Falk,* 17 Wn. App. 905, 908, 567 P.2d 235 (1977); *State v. Harris,* 14 Wn. App. 414, 420, 542 P.2d 122 (1975). The prosecuting attorney elected to keep this information from defense counsel and from the trial judge until Terry Johnson revealed it on the stand. This tactic not only falls within conduct barred by CrR 4.7(h)(2), it also runs contrary to the principles behind broad criminal discovery accepted in this state. *See State v. Nelson,* 14 Wn. App. 658, 662–63, 545 P.2d 36 (1975). The United States Supreme Court has expressed the philosophy behind rules such as 4.7(h)(2) in language particularly appropriate in this case.

> The adversary system of trial is hardly an end in itself; *it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played.* [*Williams v. Florida,* 399 U.S. 78, 82, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970).]

(Quoted with italics in *State v. Nelson, supra* at 663.)

The State would have us make a distinction between inculpatory and exculpatory evidence and find no duty to produce the former. CrR 4.7(a)(i) makes no such distinction and neither do we.

Generally speaking, the trial court has broad discretion to choose the appropriate sanction for violations of the discovery rules. CrR 4.7(h)(7). Likewise, the granting of a continuance is ordinarily a matter of discretion. However, if actual prejudice to the defendant is shown because of the denial of a continuance, reversible error has occurred. *State v. Eller,* 84 Wn.2d 90, 95, 524 P.2d 242 (1974).

In the present case, actual prejudice has been shown. It was critical to Arthur Oughton's defense that the jury believe that his relationship with Joyce Johnson had been basically warm and friendly to the very end. Although not

able directly to connect it with defendant, the prosecution's obvious purpose in presenting evidence of the mutilated clothing was to suggest that defendant had harbored violent feelings toward her. The defendant was entitled to a reasonable time to obtain rebuttal to the assertions of witness Terry Johnson and was therefore prejudiced by the denial of the continuance. *See State v. Hoggatt,* 38 Wn.2d 932, 934, 234 P.2d 495 (1951). Because the prosecuting attorney failed in the first instance to comply with the discovery rules and because defendant was then denied any reasonable opportunity to investigate and rebut newly discovered information, we hold the defendant was denied his right to a fair and unbiased trial.

### Hearsay—Lack of Cautionary Instruction

Within a half hour of the stabbing, Deputy Hodges asked Danny Johnson who had killed his mother. Over objection, the deputy testified that Danny answered, "Art." The court admitted the statement under the res gestae or excited utterances exception to the hearsay rule and for the limited purpose of providing a foundation for later testimony about why the deputies were en route to the defendant's home when they arrested him. Since Danny was neither a participant in nor a witness to the death, his statement does not qualify as a hearsay exception under our rules governing excited utterances. *Beck v. Dye,* 200 Wash. 1, 9–10, 92 P.2d 1113, 127 A.L.R. 1022 (1939). The statement was arguably admissible for the limited purpose of showing a basis for later police activity although we have grave doubts as to the necessity for it in the circumstances.

In our review of the record, we note an instance where, over objection, the trial court permitted a witness to quote a telephone conversation in which Danny Johnson declared he had found his mother's body and that defendant had killed her. This was erroneously permitted as being within the res gestae rule. Danny Johnson also testified over objection that he told the officers when they arrived that Arthur Oughton was the suspect they ought to be looking

for. Because defendant did not dispute holding the knife during the stabbing, such statements probably were not so prejudicial as to warrant a reversal of defendant's conviction. However, as will be noted later herein, questionable rulings such as this had the cumulative effect of denying defendant a fair trial.

■ The defendant claims the trial court committed reversible error because it failed to caution the jury on the limited purpose for which it admitted the statement. When evidence not otherwise admissible is admitted for a special purpose, "[o]ne is entitled, upon request, to a cautionary instruction limiting the consideration a jury shall give to evidence . . ." *State v. Kontrath,* 61 Wn.2d 588, 591, 379 P.2d 359 (1963). The defendant, however, failed to make the necessary request and therefore cannot raise this error on appeal. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 476, 403 P.2d 351, *cert. denied,* 382 U.S. 1025, 15 L. Ed. 2d 539, 86 S. Ct. 644 (1966).

ALLOWING JURY TO REVIEW TAPE RECORDING

When Arthur Oughton telephoned the sheriff's emergency number ostensibly seeking aid for Mrs. Johnson, his brief conversation was routinely tape–recorded. During the conversation he admitted to the operator that he wanted to give himself up. At trial the court admitted a duly authenticated copy of the master tape made during that conversation to show the defendant's state of mind at the time. The court allowed the jury to hear the tape.

During the closing argument, the defense counsel recalled to the jury the defendant's sobbing during the conversation and indicated they would be able to listen to the tape again. The prosecuting attorney objected and the court sustained the objection. In colloquy, after the jury had retired, the court said the tape could not be replayed by the jury during deliberation because it would be placing undue emphasis on particular testimony. Although defense counsel argued the tape was analogous to the defendant's written statement (also an exhibit) and therefore could be

reviewed by the jury, the court refused to permit the tape to go to the jury room. Although the jury did not request to hear the tape, the judge's ruling during closing argument undoubtedly gave the jury the distinct impression this would not be allowed.

We find no error in the court's refusal to permit the jury themselves to replay the tape during deliberations. A review of Washington cases dealing with the issue, however, indicates that because the tape was an exhibit, it should have been available for the jury to review, at least on request. CrR 6.15(e) requires that the jury take all exhibits received into evidence into the jury room for deliberation.

Although the trial court in our state has some limited discretion to withhold exhibits which are subject to misuse or are dangerous, *see Martin v. Schoonover,* 13 Wn. App. 48, 533 P.2d 438 (1975), we have previously found no harm in allowing a jury to review a tape recording during deliberations. *State v. Whalon,* 1 Wn. App. 785, 803, 464 P.2d 730, *review denied,* 78 Wn.2d 992 (1970). In *Whalon* we found the error regarding the tape was *in the procedure used for the review,* not in the review itself.[4] More recently, our Supreme Court dealt clearly with this issue.

In *State v. Smith,* 85 Wn.2d 840, 853, 540 P.2d 424 (1975),[5] the court held the *procedure* for playing the tape is "in some measure discretionary with the trial court" but indicated that the tape, as an exhibit, would ordinarily go into the jury room. Thus, if the tape is admitted upon retrial it should be made available to the jury to review at

---

[4]In *State v. Whalon,* 1 Wn. App. 785, 464 P.2d 730 (1970), when the jury requested to hear the tape, the bailiff had two plainclothes police officers operate the machine without informing the court or counsel.

[5]In *State v. Smith,* 85 Wn.2d 840, 540 P.2d 424 (1975), the jury requested to hear the tape. After notifying counsel and hearing argument, the court determined the proceeding was part of jury deliberations. It therefore excluded the parties and spectators and ordered the tape replayed in the presence of the court, the jury, the court reporter, the clerk and bailiff. The expressed rationale was to prevent the jury from destroying or injuring the original tape. The Supreme Court found no abuse of discretion and approved the procedure.

its request during deliberations under a procedure developed by the trial court at its discretion.

## KNIFE FOUND IN DEFENDANT'S CAR

Arthur Oughton swore the knife which killed Joyce Johnson was thrown away at the scene. Despite a persistent search, it was never found. Within a few hours of defendant's arrest, deputies searched his car and found *a* knife. The State could not show this knife was the murder weapon, or indeed, that it had any connection to this crime. A deputy was nonetheless permitted to testify as to its discovery over defendant's objections that it was irrelevant and prejudicial.

In this state we have followed a liberal approach, admitting evidence with only a slight probative effect, and allowed consideration of "whatever inferences may sensibly be drawn therefrom when it is viewed in connection with other evidence." *State v. Gersvold,* 66 Wn.2d 900, 903, 406 P.2d 318 (1965). Even where evidence does have some probative value, however, the trial judge may exclude it if its prejudicial impact on the defendant outweighs that probative value. *State v. Stevenson,* 16 Wn. App. 341, 346, 555 P.2d 1004 (1976). *Goodell v. ITT–Federal Support Servs., Inc.,* 89 Wn.2d 488, 493, 573 P.2d 1292 (1978); *State v. Goebel,* 36 Wn.2d 367, 380, 218 P.2d 300 (1950). Apropos of this principle, then Chief Judge Cardozo in *People v. Zackowitz,* 254 N.Y. 192, 172 N.E. 466 (1930), said at page 195:

> Delicate enough and subtle is the inquiry, even in the most favorable conditions, with every warping influence excluded. There must be no blurring of the issues by evidence illegally admitted and carrying with it in its admission an appeal to prejudice and passion.

Here not only did the prosecutor make no attempt to prove this knife killed Joyce Johnson, he admitted out of presence of the jury he could not. The question is whether "the matter shown has such a connection with the crime for which the accused is being tried as to tend to show that the accused committed that crime." *State v. Spadoni,* 137

Wash. 684, 695, 243 P. 854 (1926). Here the prosecution introduced evidence of a knife with a 4– to 5–inch blade and of a fatal wound at least 6 inches deep. There was no evidence that anything other than the blade, such as part of the hilt, had entered the wound. The testimony about this knife was thus of highly questionable relevance as it tended to impugn defendant's character or suggest the propensity for using knives as a "weapon," which is how the officer described the item. However, because this problem will doubtless not arise in the retrial of this case, we will not decide whether the admission of this testimony by itself constitutes reversible error.

### CHALLENGED PHOTOGRAPHS

To illustrate the testimony of a detective and the autopsy surgeon, the court admitted photographs of the victim's body taken at her residence and later during the autopsy. Alleging they are cumulative, therefore unnecessary and inflammatory, the defendant objects to the admission of four: exhibit 8 showing blood on and under a chair near the victim's body; exhibit 9 showing the victim's hands clutched to her chest; exhibit 10 showing her blouse raised to reveal the wounds and exhibit 15, an autopsy photograph showing a surgical probe inserted through the heart and other tissues along the path the knife took.

*State v. Adams*, 76 Wn.2d 650, 458 P.2d 558 (1969) outlines the limits on photographic evidence in this state. " 'The test of admissibility in such cases is whether the probative value of the photographs outweighs their probable prejudicial effect.' 23 C.J.S. *Criminal Law* § 852(1), 353 (1961)." *State v. Adams, supra* at 655. The court in *Adams* also notes generally that photographs have been found admissible when they are accurate and have probative value regarding the elements of the crime as well as when they are used to illustrate the testimony of experts such as doctors. *State v. Adams, supra* at 654. The first three challenged photographs are not duplicative of other photo-

graphs introduced and accurately depict important circumstances of Joyce Johnson's death. The fourth photograph was used to illustrate testimony about the depth of the fatal wound. Admittedly gruesome photographs may be used to provide necessary details, especially where they shed light on disputed material facts. *See, e.g., State v. Pennewell,* 23 Wn. App. 777, 780, 788, 598 P.2d 748 (1979). In the case before us, the defendant claims the victim stabbed herself. Thus, the depth and nature of the wound were important facts. We agree that even though the pictures were gruesome, they did tend to prove disputed facts and hold it was not error to admit them.

### CUMULATIVE ERROR

In concluding his arguments, the defendant invokes the doctrine of cumulative error as another ground for reversal. Our courts have used this doctrine where "[t]he combined effect of an accumulation of errors, no one of which, perhaps, standing alone might be of sufficient gravity to constitute grounds for reversal, may well require a new trial." *State v. Badda,* 63 Wn.2d 176, 183, 385 P.2d 859 (1963). This court has applied the doctrine even where, as here, valid grounds exist for reversal, in the hope that such other errors will not be repeated on remand. *See, e.g., State v. Whalon, supra* at 804. We could have reversed defendant's conviction on the denial of the continuance alone, but we cite as errors to be avoided at retrial, (1) permitting questions seeking a witness' opinion as to the truthfulness of the defendant's version of events; (2) permitting Danny Johnson's statements naming the defendant as his mother's killer and the lack of a cautionary instruction on the questionable limited purpose for which the court admitted the statement; (3) the failure to make the tape of the defendant's call to the emergency operator available to the jury during deliberations; and (4) admission of any testimony that a knife had been found in the defendant's car.

Reversed and remanded for a new trial.

PETRIE, J., and SOULE, J. Pro Tem., concur.

Reconsideration denied May 28, 1980.

Review denied by Supreme Court August 15, 1980.